[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-11455

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MARCO ZAMORA-ESTRADA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:21-cr-00346-CEH-SPF-1

_____

Before BRANCH, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

Marco Zamora-Estrada appeals his 24-month sentence for illegal reentry, 8 U.S.C. § 1326(a), and unlawful possession of a firearm by an undocumented person, 18 U.S.C. § 922(g)(5)(A). On appeal, he argues that the district court committed plain error in calculating his guidelines range. After careful review, we agree with Zamora-Estrada that the district court erred in applying both U.S.S.G. § 2K2.1(b)(6)(B) and U.S.S.G. § 4A1.2, and that this error was prejudicial. For the reasons stated below, we vacate the district court's judgment and remand the case for resentencing.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

In 2021, a federal grand jury indicted Zamora-Estrada with illegal reentry ("Count One") and unlawful possession of a firearm by an undocumented person, ("Count Two"). Zamora-Estrada pled guilty to both counts, without a plea agreement.

Before sentencing, a probation officer prepared a presentence investigation report ("PSI"), which provided the following facts. In 2010, Zamora Estrada was convicted of driving while intoxicated in state court and received a sentence of 18 months' probation. In 2011, Zamora-Estrada was detained by immigration authorities, who ultimately deported him. In 2021, state law enforcement again arrested Zamora-Estrada for driving under the influence. On August 29, 2021—while these driving charges were pending—Zamora-Estrada was arrested for being in public, visibly intoxicated, displaying a firearm, and for asking for cocaine and

sexual favors.  Zamora-Estrada had a blood alcohol level of .155. For this August 29 conduct, Zamora-Estrada was charged in state court with, and convicted of, carrying a concealed firearm and improper exhibition of a dangerous weapon.  The PSI explained that Zamora-Estrada's August 29 conduct was also the factual basis for his federal charges.

The PSI calculated an advisory guidelines range using the 2023 Sentencing Guidelines Manual.  For Count One, the PSI calculated a base offense level of eight, U.S.S.G. § 2L1.2(a), and added four levels, under U.S.S.G. § 2L1.2(b)(3)(D), because Zamora-Estrada had been convicted of a felony after his first removal from the United States, for carrying a concealed firearm.  For Count Two, the PSI calculated a base offense level of 14, U.S.S.G. § 2K2.1(a)(6)(A), and added four levels, under U.S.S.G. § 2K2.1(b)(6)(B), because Zamora-Estrada "used or possessed [the] firearm . . . in connection with another felony offense."  The PSI explained that Zamora-Estrada had possessed the firearm in connection with "a multitude of other felony offenses" which occurred on August 29, including solicitation to possess cocaine.  The PSI applied a multiple count adjustment, U.S.S.G. § 3D1.4, resulting in a combined adjusted offense level of 19, which was, in turn, reduced by three levels based on Zamora-Estrada's acceptance of responsibility, *see* U.S.S.G. § 3E1.1.  Accordingly, the PSI calculated Zamora-Estrada's total offense level to be 16.

As for Zamora-Estrada's criminal history, the PSI calculated a criminal history score of two, putting him in a criminal history

category of II.  The PSI assigned Zamora-Estrada one criminal history point for the 2021 driving charges, U.S.S.G. § 4A1.1(c), and one criminal history point for the state court August 29 charges—*i.e.,* for carrying a concealed firearm and improperly exhibiting a dangerous weapon or firearm, also under U.S.S.G. § 4A1.1(c).  The PSI explained that "[t]he circumstances" of these two August 29 state charges were "the same as the instant offense."

The PSI also noted that the maximum term of imprisonment for Count One was two years and the maximum for Count Two was 15 years.  Based on a total offense level of 16 and a criminal history category of II, the PSI calculated a guidelines imprisonment range of 24 to 30 months.

The government did not object to the PSI.  Zamora-Estrada, on the other hand, objected to the application of U.S.S.G. § 2K2.1(b)(6)(B).  He argued that there was no evidence that the firearm facilitated or had the potential of facilitating the alleged crime of solicitation to possess cocaine.  *See* U.S.S.G. § 2K2.1, comment. (n.14(A)) (explaining that the enhancement applies "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense").  Instead, he asserted his possession of the firearm and his alleged solicitation were unrelated.  He also sought a downward variance sentence, asserting that a sentence of a year and a day imprisonment to be followed by one year of supervised release would be reasonable in light of the factors in 18 U.S.C. § 3553(a).

At sentencing, the district court asked the parties whether they had any objections and neither did besides the guidelines objection noted above. Zamora-Estrada reiterated his prior objection, arguing that there was nothing in the record showing that he used the firearm in furtherance of any other crime. The court noted, however, that the PSI explained that Zamora-Estrada had "displayed" the firearm to the individual he was soliciting, and that the solicitation appeared to be a felony. The government, in turn, argued that Zamora-Estrada's possession of the firearm was in furtherance of the solicitation because "there would be no other reason *to display* a firearm in that instance" otherwise. The government highlighted that Zamora-Estrada "was ultimately convicted of carrying a concealed firearm . . . and also improper exhibition of a dangerous weapon" for this conduct. The district court agreed with the government and overruled Zamora-Estrada's objection. It explained that the weapon was "displayed" at the time Zamora-Estrada "was soliciting" sex and cocaine. Thus, it reasoned, the firearm facilitated or had the potential of facilitating another felony offense.

The court accordingly adopted the PSI as its own findings of fact and heard arguments from the parties as to the appropriate sentence. After hearing from the parties, it concluded that a low-end guidelines sentence was sufficient in light of the 18 U.S.C. § 3553(a) factors. It sentenced Zamora-Estrada to 24 months' imprisonment, to be followed by a two-year term of supervised release. Zamora-Estrada reiterated his prior objection, but the district court overruled it and adjourned the hearing.

The district court later entered a written judgment. In its statement of reasons, the district court conveyed again that it had adopted the PSI without change. Zamora-Estrada appealed.

## II. STANDARD OF REVIEW

"We review the district court's interpretation and application of the Guidelines *de novo* and its underlying factual findings for clear error." *United States v. Jayyousi*, 657 F.3d 1085, 1114 (11th Cir. 2011). We also generally review legal issues *de novo*, such as a claim of impermissible double counting. *United States v. Dudley*, 463 F.3d 1221, 1226 (11th Cir. 2006). Where a defendant, however, fails to raise an argument before the district court, we review that issue for plain error. *United States v. Grushko*, 50 F.4th 1, 16 n.5 (11th Cir. 2022).[1] "To establish plain error, a defendant must show that there was an (1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Utsick*, 45 F.4th 1325, 1332 (11th Cir. 2022). "Where all three conditions are met, we may then exercise our discretion to notice a forfeited error, but only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

As it relates to the second prong of plain error review, "[a]n error is obvious," or plain, "when it flies in the face of either binding precedent or 'the explicit language of a statute or rule.'" *United States v. Bankston*, 945 F.3d 1316, 1318 (11th Cir. 2019) (quoting

---

[1] We review for plain error an impermissible double counting challenge raised for the first time on appeal, notwithstanding an objection to the enhancement on other grounds before the district court. *Grushko*, 50 F.4th at 16 n.5.

*United States v. Chau*, 426 F.3d 1318, 1322 (11th Cir. 2005)); *see also United States v. Bennett*, 472 F.3d 825, 834 (11th Cir. 2006) (finding a miscalculated guidelines range to be a "plain" error). Under the third prong, a "defendant must show there is a reasonable probability that, but for the error, a different outcome would have occurred . . . ." *United States v. Margarita Garcia*, 906 F.3d 1255, 1267 (11th Cir. 2018). "When a defendant is sentenced under an incorrect Guidelines range . . . the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez v. United States*, 578 U.S. 189, 198 (2016). "[S]uch an error will[,] in the ordinary case," also be sufficient to "seriously affect the fairness, integrity, or public reputation of judicial proceedings, and thus will warrant relief." *Rosales-Mireles v. United States*, 585 U.S. 129, 132 (2018); *see also id.* at 140 ("The risk of unnecessary deprivation of liberty particularly undermines the fairness, integrity, or public reputation of judicial proceedings in the context of a plain Guidelines error because of the role the district court plays in calculating the range and the relative ease of correcting the error.").

## III. DISCUSSION

On appeal, Zamora-Estrada argues that the district court committed plain error by assessing him a criminal history point for his convictions in state court—for carrying a concealed firearm and improper exhibition of a dangerous weapon or firearm—when the same conduct was part of the instant offense. He contends that his August 29 conduct that led to his state court convictions was "relevant conduct" under the Guidelines to Count Two, unlawful

possession of a firearm. Moreover, he asserts that the record shows that both the federal and state crimes were in fact interrelated, and that the district court agreed. Finally, he argues that the PSI necessarily considered the August 29 conduct to be relevant conduct because it used the August 29 conduct to support an enhancement under § 2K2.1(b)(6)(B). He concedes that he did not raise this issue below but contends that he can satisfy plain error review. In response, the government asserts that the August 29 conduct that led to the carrying a concealed firearm charge in state court was not relevant conduct to the underlying federal crimes here.

A district court calculates a defendant's guideline range based on the defendant's offense level and criminal history category. U.S.S.G. Ch. 5 Pt. A. When calculating a defendant's offense level, four levels are added under section 2K2.1(b)(6)(B) when a defendant "used or possessed any firearm or ammunition *in connection with* another felony offense." U.S.S.G. § 2K2.1(b)(6)(B) (emphasis added). In determining whether the firearm has been used in connection with another felony, a "court must consider the relationship between the instant offense and the other offense, consistent with relevant conduct principles" under the rest of the Guidelines. *Id.* § 2K2.1, comment. (n.14(E)).[2] Thus, if a defendant

---

[2] Courts "may not defer" to the Sentencing Guidelines Commentary "if uncertainty does not exist" in the Guideline provision itself. *United States v. Dupree*, 57 F.4th 1269, 1275 (11th Cir. 2023) (*en banc*). Still, where—as here—both parties rely on the commentary and no party contests the commentary's interpretation, we may look to the commentary as well. *United States v. Jews*, 74 F.4th 1325, 1327-28 & n.2 (11th Cir. 2023).

uses the same firearm for two offenses, even if separated temporally by nearly a year, "[o]rdinarily," the second firearm offense is relevant conduct for the first offense, and the enhancement applies. *Id.*, comment. (n.14(E)(i)).

To calculate a defendant's criminal history category, a sentencing court uses Sections 4A1.1 and 4A1.2 to evaluate each of a defendant's prior sentences and score points depending on a variety of factors, "including the length of sentence imposed for each conviction." *United States v. Coast*, 602 F.3d 1222, 1223 (11th Cir. 2010). The Guidelines provide that one criminal history point should be added for each prior sentence that does not exceed 60 days' imprisonment. U.S.S.G. § 4A1.1(a)-(c). A "prior sentence" is "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere*, for conduct not part of the instant offense." *Id.* § 4A1.2(a)(1). "Conduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of § 1B1.3 (Relevant Conduct)." *Id.* § 4A1.2, comment. (n.1).

Section 1B1.3(a), provides that "relevant conduct," as used throughout the Guidelines, "shall be determined on the basis of the following:"

> (1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of

attempting to avoid detection or responsibility for that offense;

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivision[] (1)(A) . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction; [and]

(3) all harm that resulted from the acts and omissions specified in subsection[] (a)(1) . . . above, and all harm that was the object of such acts and omissions.

*Id*. § 1B1.3(a)(1)-(3); *see also United States v. Maddox*, 803 F.3d 1215, 1221 (11th Cir. 2015) (describing "relevant conduct" under the guidelines).

"When a district court determines that the conduct underlying a conviction is relevant conduct to the instant offense, and considers it as a factor in calculating the base offense level, it cannot then be simultaneously considered as a 'prior sentence'. . . ." *United States v. Hunerlach*, 258 F.3d 1282, 1287 (11th Cir. 2001). In fact, "the purpose" of past amendments to § 4A1.2 was "to avoid the double counting that would occur if a defendant were punished under both the 'relevant conduct' and the 'prior sentence' provisions of the guidelines." *United States v. Johnson*, 87 F.3d 1257, 1260 n.5 (11th Cir. 1996).

"Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment

on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." *United States v. Suarez*, 893 F.3d 1330, 1336 (11th Cir. 2018) (quoting *Dudley*, 463 F.3d at 1226-27). Permissible double counting can occur when: (1) the sentencing commission intended such a result; and (2) each guideline section in question concerns a conceptually separate notion related to sentencing. *Id.* "We presume that the Commission intended to apply separate guideline sections cumulatively unless specifically directed otherwise." *Id.* (quoting *Dudley*, 463 F.3d at 1227). Of course, the application of multiple guidelines sections can be "triggered by the same conduct." *Id.* (quoting U.S.S.G. § 1B1.1, comment. (n.4(B)).

Here, Zamora-Estrada has shown plain error. The district court should not have applied both U.S.S.G. § 2K2.1(b)(6)(B), which is conditioned on a finding of relevant conduct, and § 4A1.2, which is conditioned on a finding of non-relevant "prior" conduct, to Zamora-Estrada's prior conviction in state court of carrying a concealed firearm and improperly exhibiting a firearm. *See* U.S.S.G. §§ 2K2.1(b)(6)(B) & comment. (n.14(E)), 4A1.1, 4A1.2, & comment. (n.1.); *cf. also United States v. Williams*, 431 F.3d 767, 771-72 (11th Cir. 2005) (explaining the use of relevant conduct to enhancements under 2K2.1(c)(1)). It is clear, moreover, that Zamora-Estrada should not have received a criminal history point for his August 29 conduct, given that this was not a "prior sentence"—the same conduct led to the state and the federal charges and it all falls within the broad definition of relevant conduct. This error was plain under the Guidelines, the commentary, and our precedent.

*See* U.S.S.G. §§ 2K2.1(b)(6)(B) & comment. (n.14(E)), 4A1.1, 4A1.2 & comment. (n.1.); *Bankston*, 945 F.3d at 1318; *Hunerlach*, 258 F.3d at 1287; *Johnson*, 87 F.3d at 1260.

The government's counterarguments are unavailing. While it contends that Zamora-Estrada's August 29 conduct which led to his concealment conviction was not relevant conduct to his federal charges, the district court implicitly found otherwise. Specifically, it adopted the PSI's description of the state court convictions as being "the same as the instant offense[s]" which occurred on August 29; thus, the charges "occurred during the commission of the offense of conviction." U.S.S.G. § 1B1.3(a)(1)-(3); *Maddox*, 803 F.3d at 1221.[3] In any event, the record makes clear that the state and federal charges were part of the same offense conduct, and the district court noted the relevance and relatedness of the displaying of the firearm, punished by the state conviction, to the federal possession charge.

Under the third prong of plain error review, the district court's guidelines error affected Zamora-Estrada's substantial rights, because there is a reasonable probability that, but for the incorrect guidelines range, he would have received a different sentence. *See Margarita Garcia*, 906 F.3d at 1267; *Molina-Martinez*, 578 U.S. at 198. This is especially true where, as here, the district

---

[3] The government did not object to the PSI's factual descriptions, and its challenges to the PSI's description is now forfeited. *See United States v. Shelton*, 400 F.3d 1325, 1330 (11th Cir. 2005) (explaining that a failure to object to factual statements in the PSI amounts to an admission of those facts).

court concluded that a low guidelines sentence was appropriate, and the correct guidelines range would be lower. Finally, this error seriously affected the fairness, integrity, or public reputation of the judicial proceedings, especially in light of the risk of unnecessary deprivation of liberty. *See Rosales-Mireles*, 585 U.S. at 132; *Bankston*, 945 F.3d at 1320; *see also United States v. Maurya*, 25 F.4th 829, 836-37 (11th Cir. 2022) (noting that "while defendants usually face an up-hill climb in showing that an error seriously affects the fairness, integrity, or reputation of a judicial proceeding," a plain guidelines error satisfies that burden).

## IV. CONCLUSION

For the reasons we have explained, we vacate Zamora-Estrada's sentence and remand for resentencing.

**VACATED AND REMANDED.**